UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENRIQUE ORTIZ,

                         Plaintiff,

   – against –

ANTHONY RUSSO, C.O. GIBB, C.O. D.
PARKHURST, CORRECTION OFFICER
PRINDLE, DIR. D. VENETTOZZI,

                     Defendants.

**OPINION AND ORDER**

13 CIV. 5317 (ER)

---

Ramos, D.J.:

     *Pro se* plaintiff Enrique Ortiz brings this suit pursuant to 42 U.S.C. § 1983 alleging that he was issued a misbehavior report ("Misbehavior Report") and held in the Segregated Housing Unit ("SHU") for ninety days while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") in violation of his constitutional rights. Defendants Russo, Gibb, Parkhurst, Prindle, and Venettozzi (collectively, "Defendants") bring the instant motion to dismiss Plaintiff's Amended Complaint ("Am. Compl.") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that Plaintiff has failed to state any plausible claims of entitlement to relief. Def.'s Mem. L. Support. Mot. Dismiss, Doc. 33. For the reasons set forth below, Defendants' motion is GRANTED.

I.    **Background**

A.   **Factual Background**

The Court accepts the following allegations as true for purposes of this motion.[1]

On May 21, 2010, Plaintiff was an inmate at the Eastern Correctional Facility when Corrections Officer ("C.O.") Prindle approached him in the prison yard and informed him that Sgt. Parkhurst wanted to see him in his office.  Am. Compl., Doc. 28, ¶¶ 8-9.  As C.O. Prindle escorted Plaintiff across the yard, he said to Plaintiff, "take a good look at this yard because it will be the last time you ever see it, or this facility, ever again . . . because we don't allow gang members in our facility."  *Id.* at ¶¶ 11-12.  Plaintiff was escorted into an office occupied by Sergeant ("Sgt.") Parkhurst and Lieutenant ("Lt.") John Doe, who questioned Plaintiff regarding a departmental disbursement form he had used to access his inmate account.  *Id.* at ¶ 14.  On the disbursement form at issue, Plaintiff had written "33%" beside his signature.  *Id.*  The officers told Plaintiff that that the 33% symbol is a known "marking" of the Trinitarios Gang.  *Id.* at ¶ 19. Plaintiff explained that there had been a "rash of identity theft" from other inmates' institutional accounts, and the 33% symbol was simply his way of protecting his account from theft.  *Id.* at ¶ 15.

While Plaintiff was being detained by Sgt. Parkhurst and Lt. John Doe, C.O.s Prindle and Gibb searched his cell.  *Id.* at ¶ 24-25.  The search resulted in the discovery of "months and years" worth of Plaintiff's old processed disbursement receipts, all of which included the same

---

[1] Some of the allegations appear in documents attached to the original Complaint, which was partially amended by Plaintiff.  "Courts have held that it may be appropriate to consider materials outside of the Complaint in the *pro se* context  . . . and, in particular, materials that a *pro se* plaintiff attaches to his opposition papers[.]"  *Ceara v. Deacon*, No. 13-CV-6023 (KMK), 2014 WL 6674559, at *8 (S.D.N.Y. Nov. 25, 2014) (internal citations omitted) (emphasis added); *see also Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint.").

"33%" symbol next to his signature.  *Id.* at ¶ 26.  The officers also recovered a newspaper article about the Jheri Curl gang.[2]  *Id.* at ¶ 29.

Two days later, on May 23, 2010, Sgt. Parkhurst wrote and issued Plaintiff a Misbehavior Report for violating Rule 105.13 of the Standards of Inmate Behavior for New York.  *Id.* at ¶¶ 33, 36.  Rule 105.13 provides, "[a]n inmate shall not engage in or encourage others to engage in gang activities or meetings, or display, wear, possess, distribute or use gang insignia or materials including, but not limited to, printed or handwritten . . . gang related material."  N.Y. Comp. Codes R. & Regs. Tit. 7, § 270.2(B)(6)(iv) (May 28, 2008).  The Misbehavior Report found that Plaintiff (1) used the 33% symbol next to his signature to signify gang involvement, and (2) possessed a prohibited newspaper article.  Am. Compl. ¶¶ 21, 38.

Plaintiff alleges that the Misbehavior Report was false and that Sgt. Parkhurst and Lt. John Doe issued it with the specific goal of harassing Plaintiff and depriving him of his liberty.  *Id.* at ¶ 21.  Specifically, Plaintiff alleges that all of the previous disbursement receipts had been approved, and no one had ever expressed to him the concern that the 33% symbol next to his signature was gang-related.  *Id.* at ¶ 27.  He also claims that he informed prison officials that a member of his family had sent him the article, which in turn was reviewed and provided to him by "the facility's Media Review."  Compl., Doc. 2-1, at ¶ 9.  Plaintiff claims Sgt. Parkhurst was retaliating against him for the dismissal of a prior misbehavior report issued to him three years earlier by Sgt. Parkhurst, on May 18, 2007.  Am. Compl. ¶ 28.  Immediately after the Misbehavior Report was served on Plaintiff, he was removed from the general population and placed in the Special Housing Unit ("SHU").  *Id.* at ¶ 37.

---

[2] According to the Misbehavior Report, the Jheri Curl gang is a Dominican gang from the New York City area.  Am. Compl. at 19.

On May 28, 2010, Captain ("Cpt.") Russo conducted a Tier III hearing regarding the allegations in the Misbehavior Report and found Plaintiff guilty of both charges. *Id.* at ¶ 39. Cpt. Russo explained that Plaintiff provided no documentary evidence that Media Review had permitted him to possess the article at issue, Doc. 2-1 at 18,[3] and that Plaintiff's explanation that he was using the 33% symbol to prevent forgery was "unreasonable." *Id.* Cpt. Russo imposed a penalty of ninety days in solitary confinement in the SHU and six months loss of good time. Am. Compl. ¶ 39. Plaintiff claims that Cpt. Russo prevented him from defending himself at the hearing by denying him a reasonable amount of time to review documents and preventing him from calling witnesses. *Id.* at ¶¶ 38, 47; Pl.'s Mem. L. Opp., Doc. 39 at 12-14.

Plaintiff's appeal of the Tier III hearing determination was affirmed by Director ("Dir.") Venettozzi on July 30, 2010. *Id.* at ¶ 40.

**B. Procedural Background**

Plaintiff filed an Article 78 petition in state court on November 23, 2010, naming the five Defendants herein as respondents, to review the determination that he had violated Prison Rule 105.13.[4] *See* Doc. 2-1 at 26. On January 5, 2012, the New York Supreme Court for Albany County confirmed the findings of the Tier III hearing. *See Ortiz v. Fischer*, 935 N.Y.S.2d 914 (2012). The court stated, "[t]he [M]isbehavior [R]eport, together with the documentary evidence and testimony adduced at the hearing, including petitioner's admission to possessing the items in question and the testimony of the correction officials trained in identifying gang-related material,

---

[3] Given the numerous unnumbered attachments to the Complaint, the Court's citations to them refer to the page numbers reflected on ECF.

[4] Plaintiff's Article 78 petition names "Correction Officer Pringle" as a respondent, presumably referring to C.O. Prindle, who is a Defendant in the instant action.

provide substantial evidence supporting the determination of guilt." *Id*.  The court also determined that Plaintiff's "claim that he was denied adequate employee assistance because he was not provided copies of the disbursement forms and article [was] unavailing given that he was provided an opportunity to review these documents at the hearing, which he declined, and he ha[d] not demonstrated any prejudice." *Id*.  Moreover, Plaintiff's "assertion that the symbols on the disbursement forms were his personal mark and that the [M]isbehavior [R]eport was retaliatory in nature presented a credibility issue for the Hearing Officer to resolve." *Id*.  The court concluded that the Misbehavior Report itself contained "enough detailed and specific information to allow petitioner to prepare an adequate defense." *Id*.

Plaintiff filed the instant action on July 30, 2013, followed by an Amended Complaint on February 7, 2014.  Docs. 2, 28.  Plaintiff alleges violations of his First Amendment rights against all Defendants under 42 U.S.C. § 1983.  Am. Compl ¶¶ 43, 48, 54.  Plaintiff also brings Fourteenth Amendment claims against Dir. Venettozzi and Cpt. Russo for violations of his due process rights.[5]  *Id*. at ¶¶ 43, 47.  Lastly, he claims that Sgt. Parkhurst, along with C.O.s Prindle and Gibb, violated his constitutional rights by harassing him.  *Id*. at ¶ 54.  Plaintiff sues all Defendants in both their official and individual capacities.  *Id*. at ¶¶ 4-5.

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction over Plaintiff's claims for monetary damages against Defendants in their official capacities, and pursuant to Rule 12(b)(6) for failure to state a claim.

---

[5] In his opposition papers, Plaintiff states that he is dropping his conspiracy and failure to protect claims.  Doc. 39 at 29.  In any event, Plaintiff failed to assert any such claims in any of his pleadings.

## II.    Legal Standards

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first.  *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

### B.  Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe

a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as the Second Circuit recently held, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added).

A court may also take into account matters of which judicial notice can be taken. Although review is "generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits . . . we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (internal

citation and quotation marks omitted).  It is routine for courts to take judicial notice of court documents, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991); *see, e.g., Kendall v. Cuomo,* No. 12 CIV. 3438 (ALC), 2013 WL 5425780, at *6 (S.D.N.Y. Sept. 27, 2013) (taking judicial notice of a valid court order Plaintiff claimed was "false, fake, and nonexistent").

Defendants' collateral estoppel argument requires the Court to consider Plaintiff's Article 78 petition and the corresponding New York State Supreme Court decision, in which the court affirmed the outcome of his Tier III hearing.  *See Ortiz*, 935 N.Y.S.2d at 914.  Where a defendant's issue preclusion argument rests on another court's judgment, it is appropriate for the court to take judicial notice of the plaintiff's complaint filed in the previous action, along with the judgment itself, without converting the motion into one for summary judgment.  *See Simpson v. Melton-Simpson*, No. 10 CIV. 6347 (NRB), 2011 WL 4056915, at *2 (S.D.N.Y. Aug. 29, 2011).  Thus, the Court takes judicial notice of Plaintiff's Article 78 petition, along with the state court's subsequent decision.[6]

## III.   Discussion

### A.  Subject Matter Jurisdiction

Defendants move to dismiss Plaintiff's claims for monetary damages due to lack of subject matter jurisdiction.  Indeed, Defendants are entitled to Eleventh Amendment immunity and any claims brought against them in their official capacities must be dismissed.[7]

---

[6] The Court can also consider the Article 78 petition on the independent basis that it was included as an exhibit to the original complaint.  Compl., Doc. 2-1 at 26.

[7] Furthermore, "state officials cannot be sued in their official capacity for damages because such officials are not 'persons' under § 1983."  *A'Gard v. Perez*, 919 F. Supp. 2d 394, 409 n.13 (S.D.N.Y. 2013), *reconsideration denied*

"It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This bar "remains in effect when State officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Here, each of the Defendants are employees of DOCCS, a state entity, and are therefore entitled to Eleventh Amendment immunity from claims against them in their official capacity.  *See Inside Connect, Inc. v. Fischer*, No. 13-CV-1138 (CS), 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (finding the plaintiff's claims against current and former DOCCS employees to be barred the Eleventh Amendment).  New York State has neither waived its sovereign immunity, nor has Congress abrogated the state's immunity through § 1983. *See Johnson v. New York*, No. 10 CIV. 9532 (DLC), 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012) (citing *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 31 (2d Cir. 1991)). Hence, all of Plaintiff's claims against Defendants in their official capacities are barred and must be dismissed.[8]

### B.  Collateral Estoppel

Defendants argue that many of Plaintiff's claims are barred by the doctrine of collateral estoppel because they were already litigated and decided in the underlying Article 78 proceeding in state court.  Defs.' Reply Mem., Doc. 42 at 4-7.

---

(Feb. 11, 2013), *reconsideration denied* (Apr. 9, 2013), *appeal dismissed* (July 8, 2013) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

[8] In his opposition papers, Plaintiff stated that he is "willing to forego all monetary damages in lieu of declaratory relief seeking to simply reverse the underlying decision."  Doc. 39 at 12.  Regardless, where "the only available declaratory relief would be that Defendants' past policy or practice violated Plaintiff's rights . . . such relief is barred under the Eleventh Amendment."  *Inside Connect, Inc.*, 2014 WL 2933221, at *7.

A party who had a full and fair opportunity to litigate an issue in a previous proceeding may, under of the doctrine of collateral estoppel, be barred from raising an identical issue in a later proceeding. *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003). Collateral estoppel, often referred to as issue preclusion, bars the "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *W & D Imports, Inc. v. Lia*, 563 F. App'x 19, 22 (2d Cir. 2014) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

Under 28 U.S.C. § 1738, federal courts are required to give preclusive effect to state court judgments where the courts of the state would do so. *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997) (citing *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980)). Thus, New York law applies when determining what preclusive effect the prior judgment in an Article 78 proceeding has on a § 1983 action in federal court. *Blasi v. New York City Bd. of Educ.*, No. 00-CV-5320 (RRM) (MDG), 2012 WL 3307227, at *7 (E.D.N.Y. Mar. 12, 2012) *report and recommendation adopted*, No. 00-CV-5320, 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012) *aff'd*, 544 F. App'x 10 (2d Cir. 2013); *see also Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996); *Bussa v. Educ. Alliance, Inc.*, No. 14-CV-449 GBD (JLC), 2014 WL 4744556, at *2 (S.D.N.Y. Sept. 24, 2014).

In applying New York collateral estoppel rules, the Second Circuit has identified two essential elements. "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (quoting *Juan C. v. Cortines*, 679 N.E.2d 1061, 1065 (N.Y. 1997)). Under New York law, "[t]he party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party

11

against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

Plaintiff's due process claim against Cpt. Russo raises issues identical to those already decided in his Article 78 proceeding.[9]  Here, Plaintiff claims that Cpt. Russo violated his due process rights when he "denied him a reasonable amount of time to review the documents" that were the subject of the charges against him and the right to call witnesses.  Doc. 39 at 12-14. Plaintiff also asserts that he was denied a fair and impartial hearing officer because Cpt. Russo was biased and unqualified to preside over the hearing.  *Id.* at 15-16.  Similarly, in his Article 78 petition, Plaintiff argued that Cpt. Russo failed "to afford petitioner adequate employee assistance" because the assistants assigned to Plaintiff told him he was not entitled to many of the documents and witnesses he wanted, and then "failed to meet back" with him to give him the documents he had requested.  Compl., Doc. 2-1 at 28, 31-32, ¶¶ 10, 17.  He also alleged that Cpt. Russo denied him "ample time to digest or review the documents" and the right to call witnesses. *Id.* at 30-31, ¶¶ 16-17.  In addition, Plaintiff's Article 78 petition alleged that he was denied the right to have his "innocence or guilt determined by a fair and impartial hearing officer" in that Cpt. Russo was "arbitrary and capricious[.]"  *Id.* at 30, ¶ 15.  In sum, it is clear that Plaintiff raised identical issues in his Article 78 petition with respect to Cpt. Russo as he does in the instant litigation.

---

[9] Defendants also argue that Plaintiff's claims against C.O.s Prindle and Gibb are barred.  Doc. 42 at 4-7.  However, these claims are not clearly precluded.  Although Plaintiff's Article 78 petition asserted that C.O.s Prindle and Gibb searched his cell and recovered the article at issue, Doc. 2-1 at 27, ¶ 8, nowhere in his Article 78 petition did Plaintiff argue that their actions violated his First Amendment rights or were retaliatory in nature.  Given these facts, it is not apparent that Plaintiff is raising identical issues to those in his Article 78 petition.

Plaintiff has also failed to prove that he was not given a full and fair opportunity to litigate the claims in the prior proceeding. *Giakoumelos*, 88 F.3d at 59; *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 491 (1984) ("[T]he burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding."). Nowhere in Plaintiff's papers does he demonstrate that he did not have a full and fair opportunity to litigate all the issues related to the Misbehavior Report and Tier III proceeding in state court. Any assertion to the contrary by Plaintiff would be without merit, given that he submitted a petition supported by exhibits, as well as a reply to the respondents' opposition papers. *See Fortunatus v. Clinton Cnty., N.Y.*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) ("[The plaintiff] cannot gainsay that he had a full and fair opportunity to litigate his claims of denial of equal protection and due process. In addition to his lengthy petition, [the Plaintiff] submitted sworn affidavits, exhibits, and a memorandum of law in support of his claims, all of which would substantiate a full opportunity to litigate."). Therefore, Plaintiff's Fourteenth Amendment due process claims against Cpt. Russo are barred by the doctrine of collateral estoppel.

In the instant case, Plaintiff also alleges a retaliation claim against Sgt. Parkhurst. Am. Compl. ¶ 54. Although Plaintiff did not directly state a retaliation claim in his Article 78 petition, he concedes that the state court addressed the issue after Plaintiff "made the attempt" to argue it. Doc. 39 at 11-12. Indeed, the state court held that Plaintiff's assertion "that the [M]isbehavior [R]eport was retaliatory in nature presented a credibility issue for the Hearing Officer to resolve[.]" *Ortiz*, 935 N.Y.S.2d at 916. Thus, because the issue was addressed by the Supreme Court, Plaintiff's retaliation claim against Sgt. Parkhurst is also precluded.

Finally, although the only reference to Dir. Venettozzi in the Article 78 petition is Plaintiff's statement that Dir. Venettozzi affirmed the Tier III hearing findings, Doc. 2-1 at 33,

¶ 20, Plaintiff does not appear to base the instant action on any other separate acts committed by him.  *See* Am. Compl. ¶¶ 40, 43, 45.  Therefore, to the extent Plaintiff is merely challenging Dir. Venettozzi's decision to uphold the results of the Tier III hearing, his claim is barred.

## C.  Adequacy of Pleadings

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.*

### i.  Constitutionality of Rule 105.13

Liberally construed, Plaintiff's complaint alleges a variety of First Amendment violations related to his possession of the article.  Plaintiff alleges that C.O.s Prindle and Gibb violated his First Amendment rights by confiscating the newspaper article from his cell, that Sgt. Parkhurst violated his First Amendment rights by penalizing him for possessing the article, and that Cpt. Russo violated his rights by finding him guilty of the charge in the Tier III Hearing.  Am. Compl. ¶¶ 24, 29, 38, 48.  He also accuses Dir. Venettozzi of confining him "for exercising his first amendment [sic] right[.]"  *Id.*  In effect, Plaintiff is either claiming that Defendants violated his First Amendment rights in the manner in which they enforced Prison Rule 105.13 or the regulation itself is unconstitutional.

14

With respect to the prison regulation itself, although imprisonment does not automatically deprive a prisoner of his First Amendment rights, "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Beard v. Banks*, 548 U.S. 521, 528 (2006). In addition, courts owe "substantial deference to the professional judgment of prison administrators." *Id.* (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)) (internal quotation marks omitted). Thus, challenges to prison regulations that allegedly inhibit First Amendment rights "must be analyzed in terms of the legitimate policies and goals of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Prison regulations impinging on inmates' constitutional rights are valid "if they are reasonably related to legitimate penological interests . . . and are not an exaggerated response to such objectives." *Beard*, 548 U.S. at 528 (internal citation and quotation marks omitted). In *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), the Supreme Court identified four factors to consider in determining the reasonableness of a prison regulation. First, "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. at 482 U.S. at 89 (citing *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, courts must assess "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, courts should consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, courts should consider any "ready alternatives" to the regulation in question for furthering the governmental interest. *Id.* "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," whereas "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." *Id.*

The first *Turner* factor, requiring a valid and rational connection between the prison regulation and the legitimate government interest, is met in this case.  The Supreme Court has recognized the prevalence of dangerous gang activity within prison walls and the importance of preventing it.  *Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) ("Prison security, imperiled by the brutal reality of prison gangs, provides the backdrop of the State's interest [in determining placement in a supermax prison] . . . gangs seek nothing less than to control prison life and to extend their power outside prison walls."); *Turner*, 482 U.S. at 91-92 ("the Missouri Division of Corrections had a growing problem with prison gangs, and . . . restricting communications among gang members . . . was an important element in combating this problem.").  Here, the regulation seeks to minimize gang activity amongst inmates by limiting the amount of gang-related communication within a prison.

As to the second *Turner* factor, the regulation provides for alternative means of exercising First Amendment rights.  Specifically, Prison Rule 105.13 presumably allows inmates to possess published gang-related materials that are available through the library or approved through the Media Review process.[10]  Regulations which limit, but do not eliminate, the availability of alternatives means of exercising a constitutional right may be permissible.  *Beard*, 548 U.S. at 532.   While the Court recognizes that Plaintiff alleges that he was issued the article by "the department's correspondence office," Am. Compl. ¶ 32, the transcript of the Tier III hearing indicates that Plaintiff was unable to provide any documentation establishing that Media Review had approved the article.  Doc. 2-4 at 105-106.  The New York Supreme Court

---

[10] The language of Rule 105.13 "excludes published material that the inmate has obtained through the facility library or that has been approved for the inmate to possess through the media review process."  N.Y. Comp. Codes R. & Regs. Tit. 7, § 270.2(B)(6)(iv) (May 28, 2008).

subsequently affirmed the finding that Plaintiff was guilty of violating Rule 105.13.  Regardless, the question for purposes of the second *Turner* factor is not whether prison authorities properly interpreted Rule 105.13; it is whether Rule 105.13 provides a reasonable alternative.

The third *Turner* factor evaluates the magnitude and nature of accommodating the asserted constitutional right.  Allowing inmates to possess gang-related materials would likely cause a "ripple effect" on other inmates and prison staff; in such circumstances, "courts should be particularly deferential to the informed discretion of corrections officials."  *See Turner*, 482 U.S. at 90.  Thus, given the threat of gang activity within prisons, accommodating the purported right to possess gang-related materials would likely produce a negative result.

Consideration of the final *Turner* factor also supports the reasonableness of this regulation.  "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable[.]"  *Id.* at 90. Thus, if an inmate can suggest an alternative that accommodates his constitutional rights at a minimal cost to valid penological interests, this may be evidence that a regulation does not satisfy the "reasonable relationship" standard.  *Id.* at 91.  Here, Plaintiff has not provided any alternatives to the current regulation, nor has he pleaded facts which suggest that obvious alternatives exist.  As a result, the Court cannot say the prison regulation fails the "reasonable relationship" standard set forth in the final prong of the *Turner* test.

Finally, the Court notes that substantial deference must be given to prison administrators in matters affecting discipline and safety.  *Overton*, 539 U.S. at 132 ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").  An analysis of the challenged regulation against the *Turner* factors in conjunction with the deference owed to prison officials

17

compels the conclusion that the regulation in question does not unreasonably restrict Plaintiff's First Amendment rights.

Therefore, to the extent that Plaintiff challenges the constitutionality of Prison Rule 105.13 itself, he fails to state a claim under the First Amendment.

### ii.   First Amendment Retaliation Claims

Insofar as Plaintiff challenges whether Defendants faithfully enforced Prison Rule 105.13 by penalizing him for possessing the article which he claims was approved through the Media Review process, the Court is required to follow the findings of the state court during Plaintiff's Article 78 proceeding, where it affirmed that Plaintiff was guilty of violating Rule 105.13.  *See Ortiz*, 935 N.Y.S.2d at 916.  However, the Court also construes the Amended Complaint as alleging First Amendment retaliation claims that were not previously raised against C.O.s Prindle and Gibb.[11]  Am. Compl. ¶¶ 28, 54.  Plaintiff alleges that C.O.s Gibb and Prindle "retaliated against him" by searching his cell and confiscating a news article containing gang-related material.  Am. Compl. ¶ 54.  C.O.s Prindle and Gibb were instructed by Sgt. Parkhurst to perform the cell search.  *Id.* at ¶ 25.

"[I]t is well settled that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'"  *Williams v. Dubray*, 557 F. App'x 84, 87 (2d Cir. 2014) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  Rather, "the inmate must show something more, such as that he was deprived of due process during the resulting disciplinary

---

[11] Plaintiff also alleges retaliation claims against Sgt. Parkhurst.  Am. Compl. ¶ 54.  For the reasons set forth in Section III.B, Plaintiff's claim of retaliation against Sgt. Parkhurst must be dismissed because it was adjudicated by the State Supreme Court in its Article 78 proceeding.  Even if the Court were to consider it on the merits, however, it would still fail due to the lack of temporal proximity between the dismissal of the 2007 misbehavior report and the conduct at issue here.

hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." *Id.* (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)). A First Amendment retaliation claim under § 1983 requires that a prisoner establish three elements; "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).

Acknowledging "the ease with which claims of retaliation may be fabricated," courts "examine prisoners' claims of retaliation with skepticism and particular care." *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (quoting *Colon*, 58 F.3d at 872); *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (retaliation claims by prisoners are "prone to abuse"). Recognizing the possibilities for abuse in retaliation claims, "we have insisted on a higher level of detail in pleading them[.]" *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Thus, a complaint "which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Id.* (citing *Flaherty*, 713 F.2d at 13).

At the outset, Plaintiff fails to specifically identify the speech or conduct at issue which he purports to be protected. Plaintiff argues that Sgt. Parkhurst and C.O.s Prindle and Gibb retaliated against him because an earlier misbehavior report, issued against him by Sgt. Parkhurst in 2007, was overturned. Am. Compl. ¶¶ 20-21. In the prison context, free and inhibited access to seek redress of grievances against state officers is a protected right. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). Plaintiff has not stated whether he took any constitutionally protected action against Sgt. Parkhurst regarding the 2007 report. Presumably, however, the 2007 report

19

was dismissed after Plaintiff filed a grievance or complaint.  Even if the Court accepts this as true, his retaliation claims still fails for the reasons stated below.

Plaintiff does not allege facts which establish that C.O.s Gibb and Prindle took an adverse action against him.  Although the Second Circuit has not specifically addressed whether a cell search constitutes "adverse action" as required for a retaliation claim, many district courts in this circuit have held that it does not.  *See Williams v. King*, No. 11-CV-1863 (SAS), 2014 WL 3925230, at *10 (S.D.N.Y. Aug. 11, 2014) (collecting cases).  Additionally, Plaintiff fails to allege any facts that would support a finding that C.O.s Prindle and Gibb were personally motivated by the dismissal of an earlier grievance they have no apparent connection with. Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim.  *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a *pro se* prisoner's claim that he was assaulted by the defendant in retaliation for an earlier letter he wrote which did not name or address defendant); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (the plaintiff "failed to provide any basis to believe that [the defendant] retaliated for a grievance that she was not personally named in"); *Hare v. Hayden*, No. 09 CIV. 3135 RWS, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."); *Bryant v. Goord*, No. 99 CIV. 9442, 2002 WL 553556, at *2 (S.D.N.Y. Apr. 12, 2002) ("The grievances that Plaintiff filed prior to the disciplinary proceedings at issue here did not involve any of these Defendants, therefore, there is no basis to assume that these Defendants . . . retaliate[d] for his filing grievances against other corrections officers.").

Finally, Plaintiff's retaliation claims lack the necessary causal connection.  In evaluating whether a causal connection exists, "a number of factors may be considered, including: (i) the

temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a [Tier III] hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Jones v. Marshall*, No. 08 CIV. 0562, 2010 WL 234990, at *4 (S.D.N.Y. Jan. 19, 2010) (quoting *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002)) (internal quotation marks omitted).

Here, Plaintiff argues Defendants retaliated against him in 2010 for an overturned misbehavior report issued more than three years earlier. Am. Compl. ¶ 28. Citing an incident which occurred three years prior is generally insufficient to satisfy the causal connection requirement for a retaliation claim. *Spavone v. Fischer*, No. 10 CIV. 9427 (RJH) (THK), 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012) (finding fifteen months inadequate to establish a causal connection through temporal proximity); *Crawford v. Braun*, No. 99 CIV 5851 (RMB) (JCF), 2001 WL 127306, at *6 (S.D.N.Y. Feb. 9, 2001) (describing a lapse of seven months as too "attenuated" for purposes of temporal proximity). Plaintiff also asserts that he "can, without a doubt, demonstrate proof of good behavior." Doc. 39 at 19. However, the attachments to Plaintiff's complaint reveal his disciplinary record is not as pristine as he represents.[12] As to the third factor, he admits that the Misbehavior Report was upheld by a Tier III hearing officer, Dir. Venettozzi, and a New York Supreme Court. *See* Am. Compl. ¶¶ 39, 40; *see also Ortiz*, 935 N.Y.S.2d at 914.

---

[12] Plaintiff states that, with the exception of this Misbehavior Report, he has "never been charged with egregious [sic] misconduct to warrant a superintendent's hearing." Doc. 39 at 19. He goes on to state that a "superintendent's hearing" or, Tier III hearing, "is reserved for the most serious alleged disciplinary infractions." *Id.* at n.9. However, Plaintiff's original complaint attached two misbehavior reports, one from 2010 and another dated 2011, charging Plaintiff with multiple infractions including smuggling and the unauthorized exchange of personal items. Doc. 2-2 at 76, 79.

Plaintiff's claims against C.O.s Prindle and Gibb also allege retaliation in "wholly conclusory" terms.  *Flaherty*, 713 F.2d at 13.  Thus, the First Amendment retaliation claims against them must be dismissed.

### iii.    Harassment Claims

Although Plaintiff did not address any harassment claims in his papers opposing Defendants' motion to dismiss, his Amended Complaint alleges that the Defendants "retaliated against him by harassing him."  Am. Compl. ¶ 54.

"Prisoners have no constitutional right to be free from harassment."  *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (citing *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  In order to qualify for constitutional protection, the alleged harassment "may be so drastic as to violate the Eighth Amendment's right to be free from cruel and usual punishment, but only in the harshest of circumstances."  *Id.*  It "must be objectively and sufficiently serious," and deny the inmate "the minimal civilized measure of life's necessities."  *Id*.

Plaintiff states that, after learning that his 2007 misbehavior report had been dismissed, Sgt. Parkhurst "threatened plaintiff that he would get him at some later point."  Doc. 39 at 17.  In extremely broad terms, Plaintiff claims that Sgt. Parkhurst "used the disbursement forms and the newspapers articles for his purposes of harassing Plaintiff[.]"  Am. Compl. ¶ 33.  He also asserts that Sgt. Parkhurst conducted a 72-hour investigation, which Plaintiff alleges is "another form of harassment[,]"during which Plaintiff was "in confinement without charge."  *Id*. at ¶ 34.  Plaintiff claims that Sgt. Parkhurst, along with C.O.s Prindle and Gibb, used this 72-hour investigation to "finalize their set up on [sic] him."  *Id.* at ¶¶ 34-35.  Based on these allegations, the Court is

unable to conclude that Defendants harassed Plaintiff to a level which amounts to an Eighth Amendment violation.

Unless accompanied by a physical injury, verbal harassment alone "does not constitute the violation of *any* federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz*, 994 F. Supp. at 474 (emphasis added). Threats, verbal harassment, and similar behavior are not sufficient for a claim under 42 U.S.C. § 1983. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at an inmate generally do not rise to this level [of a constitutional violation]."); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding "name calling" by a prison official was not a constitutional violation); *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (being yelled at, spit at, and threatened with time in the SHU did not rise to the level of a § 1983 claim); *Montero v. Crusie*, 153 F. Supp. 2d 368, 376 (S.D.N.Y. 2001) ("Verbal threats or harassment, unless accompanied by physical force or the present ability to effectuate the threat, are not actionable under § 1983."). Thus, Sgt. Parkhurst's threat to "get him at some later point" does not constitute a constitutional violation.

### D.  Failure to Allege Personal Involvement of Dir. Venettozzi

It is the well settled law of this Circuit that a claim brought under § 1983 must allege the personal involvement of each defendant. *See, e.g., Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (listing Second Circuit cases). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient . . . and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).

23

Plaintiff alleges that Dir. Venettozzi deprived him of his Fourteenth Amendment rights when he wrongly affirmed the disposition of the hearing, thus penalizing and confining Plaintiff for exercising his First Amendment Rights.  Am. Compl. ¶ 43.  Courts within this Circuit are split as to whether a prison official who simply denies an inmate's administrative appeal from a disciplinary hearing can be held liable under § 1983.  *Compare Jamison v. Fischer*, No. 11 CIV. 4697 (RJS), 2012 WL 4767173, at *4 (S.D.N.Y. Sept. 27, 2012) (holding that the administrative official who affirmed the results of the plaintiff's disciplinary hearing was not personally involved because the alleged constitutional violation had ceased by the time that he was called upon to review the appeal), *with Thomas v. Calero*, 824 F. Supp. 2d 488, 509 (S.D.N.Y. 2011) (denying motion to dismiss because, by affirming the results of the plaintiff's disciplinary hearing, the defendant's actions were "sufficient to demonstrate personal involvement and could lead a trier of fact to impose liability").  This Court agrees with the line of decisions that hold that "an official reviewing an appeal of a prison disciplinary hearing can be held liable under § 1983 only if the constitutional violation complained of . . . is itself ongoing."  *Jamison*, WL 4767173, at *5 (citing *Odom v. Calero*, No. 06 CIV 15527 (LAK) (GWG), 2008 WL 2735868, at *7 (S.D.N.Y. July 10, 2008)).  As one court has noted, "allowing suits to proceed against all of the officers who reviewed an inmate's appeal in such a situation would improperly impose supervisory liability, conflicting with the clear mandate of *Iqbal* and many years of Second Circuit case law."  *Id.*

Since Dir. Venettozzi's involvement was distinct from the constitutional violations Plaintiff has alleged against the other Defendants, he cannot be held liable under § 1983 for violations that occurred prior to his review and were not ongoing.  *See id.*  Therefore, Plaintiff cannot sustain a claim against Dir. Venettozzi under § 1983.

**E. Habeas Corpus**

In the alternative, Plaintiff asks this Court to "convert this action" to a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 39 at 11.  However, a complaint alleging 42 U.S.C. § 1983 claims is not interchangeable with an application for a writ of habeas corpus.  *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 202 n.5 (S.D.N.Y. 2004) (refusing to *sua sponte* convert a § 1983 action into a petition to habeas corpus because doing so "may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated.") (quoting *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998)); *Garcia v. Aquavuva*, No. 13-CV-4360 SLT JMA, 2013 WL 6248524, at n.2 (E.D.N.Y. Dec. 3, 2013) (denying plaintiff's motion to convert his § 1983 action to a habeas petition).  This Court will not transform Plaintiff's complaint into a petition for habeas corpus.

**F. *Heck v. Humphrey***

Defendants argue that many of Plaintiff's claims are barred by *Heck v. Humphrey*.  Doc. 33 at 12.  In *Heck v. Humphrey*, the Supreme Court held that if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[,]" the court must dismiss his complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  512 U.S. 477, 486-87 (1994).

The Second Circuit clarified the application of the *Heck* rule to "mixed sanction" cases, where a prisoner is subject to a single disciplinary proceeding that results in sanctions that affect both the duration of his imprisonment and the conditions of his confinement.  In "mixed sanction" cases, a prisoner

> can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any*

25

> *sanctions that affect the duration of his confinement.*  In other
> words, the prisoner must abandon, not just now, but also in any
> future proceeding, any claims he may have with respect to the
> duration of his confinement that arise out of the proceeding he is
> attacking in his current § 1983 suit.

*Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) (emphasis in original).

Here, Plaintiff was sanctioned with ninety days in the SHU and six months loss of good

time credits.  Am. Compl. ¶ 39.  If Plaintiff indeed lost good time credits, the rule from *Heck*

bars Plaintiff from challenging the loss because he has not shown that it was invalidated.[13]

*Peralta*, 467 F.3d at 100; *Paulino v. Fischer*, No. 9:12-CV-00076 (TJM), 2013 WL 5230264, at

*6 (N.D.N.Y. Sept. 16, 2013) ("The rule announced in *Heck* applies whenever a prisoner

challenges the fact or length of his conviction or sentence, including being deprived of 'good

time' credits in a prison disciplinary proceeding, where the deprivation impacts the duration his

confinement.").  To the extent Plaintiff challenges his confinement in the SHU as a result of the

Misbehavior Report, his claims are barred by *Heck* because he has not indicated that he is willing

to forgo any and all challenges to his loss of good time credits.  *See Peralta*, 467 F.3d at 104.

"In mixed sanction actions, a *pro se* plaintiff should be given the option of waiving any

challenge to conditions affecting the duration of his confinement so that he can proceed with his

claims with respect to the conditions of his confinement."  *Paulino*, 2013 WL 5230264, at *7.

However, because all of Plaintiff's claims are dismissible on separate grounds, presenting

Plaintiff with this option is unnecessary.

### G.  Qualified Immunity

Finally, Defendants contend that Plaintiff's claims should be dismissed under the doctrine

---

[13] In his papers, Plaintiff claims that he could not lose good time credits because he was ineligible to receive them by
virtue of the fact that he is serving an "indeterminate sentence of 25 years to life."  Doc. 39 at 9.

of qualified immunity.  Doc. 33 at 21.  A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where the conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.  *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (internal citations omitted).

At the very least, Defendants' qualified immunity argument succeeds on the third prong of the test, because the Defendants' actions were objectively reasonable in light of clearly established legal rules regarding circumstances present here.  The substantial deference due to prison officials allows them to use their professional judgment to reach an experience-based conclusion that prison policies, such as Rule 105.13, work to further prison objectives.  *Beard*, 548 U.S. at 533.  Moreover, there is no authority establishing a First Amendment right to possess gang-related newspaper articles or publications.  Taking into account both the objective reasonableness of the Defendants' actions and the absence of a clearly established right, Defendants are entitled to qualified immunity with respect to Plaintiff's First Amendment claims.

## IV.    Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31, to mail a copy of this Opinion and Order to Plaintiff, and to close the case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:    March 27, 2015
          New York, New York

                                         Edgardo Ramos, U.S.D.J.